UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| **Seafood Treasures, Inc.** § | |
| *Plaintiff,* § | |
| § | |
| **versus** § | Civil Action No. 1:21-cv-00161 |
| § | |
| **The Drilling Vessels currently or formerly** § | In Admiralty, Rule 9(H) |
| **Known as the** *Dolphin 106* **and** *Dolphin 110* § | |
| ***Et al.*** § | |
| *Defendants*. § | |

### Default Motion *In Rem* against the
### Dolphin 106, official number D653833, and the Dolphin 110, official number 8206767

To the Honorable Judge Marcia A. Crone:

Comes now, Seafood Treasures, Inc. ("Plaintiff" or "Seafood Treasures") and files this unopposed motion for default judgment *in rem* against the vessels *Dolphin 106* (official number D653844) and *Dolphin 110* (official number 8206767) (collectively "the Vessels"), and pursuant to Federal Rule of Civil Procedure 55 respectfully request the Court to enter a default judgment against the Vessels.

**I.   Background**

This is a maritime arrest and foreclosure case on two abandoned drilling rigs. As the court may be aware, these Vessels were the subject or prior litigation before this court where they were arrested and sold at judicial auction. *See,* Cause No. 1:16-cv-00194-MAC. Since that time, the vessels have been moored at Plaintiff's facility in Sabine Pass, Texas.

On January 11, 2020 Versatile Marine, LLC defaulted on the lease it had with Plaintiff, leaving the Vessels to accrue unpaid dockage on a daily basis in the amount of $1000 per day per vessel. On December 7, 2020 after numerous attempts to have Versatile bring the lease current or remove the rigs, Plaintiff submitted a demand letter for unpaid dockage in the amount

7

of $642,000 to the owner of record of the Vessels, Universal Offshore Rigs, Inc. *See* attached demand letter, Exh. A.

Universal Rigs did not respond, and so on April 12, 2021, Plaintiff filed the above entitled and numbered lawsuit pursuant to a lien for custodial legis and unpaid dockage incurred by the Vessels in the amount of $894,000 Dollars. *See* Court's Document No. 1, Plaintiff's Original Complaint.

On May 11th, 2021, the U.S. Marshal arrested the Vessels. *See* Court's Doc. No. 16. Since that time the vessels have remained at Plaintiff's facility acting as the substitute custodian as they cannot be easily (or cheaply) moved.

Publication of Notice of the Arrest of the Vessels took place in accordance with this Court's order starting on June 23, 2021 and ending on July 3, 2021. *See* Affidavit of Publication, Court's Doc. No. 21. Since that time, only one entity has appeared making a claim of interest in the vessels, Universal Rigs and Equipment, LLC, (Universal) but Universal has not filed an answer on behalf of the vessels *in rem* as required by the Notice of Arrest. *See* Court's Doc. No. 22.

It should be noted that Universal has attempted to enter into settlement discussions with Plaintiff since filing its notice of interest, but those have not been fruitful. The time for Universal to file a notice of interest was no later than July 19, and to file an answer no later than August 9th, 2021, well past the deadlines. No defendant has taken any action consistent with an intent to defend the Vessel. No answer has been filed and no one has appeared to defend on behalf of the Dolphin 106 or Dolphin 107.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court should take judicial notice that the Vessel is not a minor or incompetent person, and is not a member of the armed services.

## II. The Vessels have been abandoned and are incurring dockage on a daily basis

As previously mentioned, the vessels have been effectively abandoned at Plaintiff's facility in Sabine Pass, Texas since January of 2020. Since that time, Plaintiff's water access and ability to re-lease his property have been substantially impaired by the abandonment of the two drilling rigs (and other equipment) left at Plaintiff's facility. There is no factual dispute that the Vessels have been abandoned, and there is no dispute that the vessels have been in the care and custody of Plaintiff since January of 2020. Therefore Plaintiff has a claim for not only unpaid dockage, but also for *custodia legis*.

## III. Plaintiff has incurred *custodia legis* expenses on behalf of the vessels

In *custodia legis* is a Latin phrase which means "in the custody of the law." In the admiralty context, custodia legis expenses are the costs, fees, and expenses incurred by seizing a vessel. Common *custodia legis* expenses include dockage fees, maintenance costs, and necessary fuel and water to keep equipment operating while a vessel is under arrest. Although expenses and costs incurred while a vessel is under seizure and in judicial custody do not create a maritime lien, it is well-settled that "services or property advanced to preserve and maintain the vessel under seizure, furnished upon authority of the court, should be allowed as custodia legis expenses." *Gen. Elec. Credit & Leasing Corp. v. Drill Ship Mission Expl.*, 668 F.2d 811, 816 (5th Cir. 1982). *See also N.Y. Dock Co. v. The Poznan*, 274 U.S. 117, 121 (1927) ("[S]ervices or property furnished ... for the common benefit of those interested in a fund administered by the court, should be paid from the fund as an 'expense of justice.' "); *Associated Metals & Minerals Corp. v. Alexander' s Unity MV*, 41 F.3d 1007, 1018 (5th Cir. 1995) (affirming the award of custodia legis expenses and finding that "[a]nything that maintained the value of the ship benefited all of the lienholders of the ship").

As protection to parties who advance funds to seize a vessel, and to parties who render

services to a seized vessel, priority is awarded to claims of custodia legis expenses over all maritime lien claims. *See John W. Stone Oil Distrib., Inc. v. M/V Red Rose*, 1987 A.M.C. 137, 140 (E.D. La. 1985) ("[C]ustodia legis expenses which are incurred in the care and custody of a vessel while it is within the custody of a Court enjoy a high priority in the distribution of proceeds from a judicial sale and actually outrank all maritime lien claims.").

**IV.   $1000 a day dockage per vessel is reasonable rate under the circumstances**

Plaintiff submits that $1000 a day dockage is a reasonable rate under the circumstances for parking and abandoning two decommissioned drilling rigs. In the event this is a contested default judgment hearing, Plaintiff requests the right to call an expert witness to testify on the reasonableness of the dockage charges incurred in this case at the Default Judgment hearing and offer testimony on the costs of a layberth or long-term dockage in the Orange, Jefferson, and Galveston and Harris County marine waterway systems.

**V.   As of November 15, 2021, the Vessels have incurred $1,318,000 in unpaid dockage and should be sold by order of this Court**

At a daily rate of $1000 per day per Drilling Rig, the vessels have incurred, collectively $1,318,000 in unpaid dockage (custodia legis) expenses. Because no one has appeared and sought to secure the release of the vessels, they should be ordered sold at auction in order to find a buyer who is either willing to scrap them on site or have them towed away to be scrapped. Therefore, Plaintiff petitions the Court to Enter a Default Judgment against the *Dolphin 106* in the amount of $659,000 and against the *Dolphin 110* in the amount of $659,000 (collectively $1,318,000) for unpaid dockage and that the Vessels be sold at interlocutory sale to satisfy the judgment.

## Conclusion

Accordingly, Seafood Treasures, Inc. asks the Court to enter an order directing entry of default against the Vessels in the amount of $1,318,000, and awarding Seafood Treasures, Inc.

default judgment against any proceeds that may be collected from the proceeds of the sale of the Vessels and for any and all relief that it may be entitled.

Respectfully submitted,

**THE CREW LAW FIRM, P.C.**

*/s/ Paxton N. Crew*
Paxton N. Crew
ATTORNEY IN CHARGE
FOR PLAINTIFF
State Bar No. 24058720
303 E. Main, Suite 260
League City, Texas 77573
Phone: 713-950-0909
Fax: 409-908-4050
Email: paxton@thecrewlawfirm.com

### Certificate of Service

I, Paxton N. Crew, certify that on this November 15, 2021, a copy of the foregoing document was filed via the Electronic Case Filing System upon all known parties including:

Eugene Wade Barr
Royston Rayzor Vickery & Williams LLP - Galveston
306 22nd Street, Ste 301
Galveston, TX 77550
    *Via ECF*

*/s/ Paxton N. Crew*
Paxton N. Crew

7